# CHARLESTON.

## W. B. GEARY v. J. F. BUTTS et al.

### Submitted April 29, 1919. Decided May 27, 1919.

1. CONSTITUTIONAL LAW—*Remainders—Sale of Interest of Unborn Remaindermen—Constitutionality of Statute—Due Process of Law.*

   The legislature had the power to enact sections 24b (1)—24b (12), ch. 71, Barnes' Code 1918, providing for the sale or lease of lands in which are contingent remainders in persons yet unborn, where all persons in being who have any vested, contingent or expectant estate or interest, either at law or in equity, are made parties, and the proceeds of the sale or lease are substituted for such land, giving to all persons the same estates or interests in such proceeds as they had or would have had in the land itself. Nor does such sale deprive the unborn remaindermen of their property without due process of law. (p. 353).

2. REMAINDERS—*Sale of Contingent Interest—Protection of Proceeds.*

   It is, however, the imperative duty of the court having jurisdiction of such a cause and of the parties in being interested in the subject matter thereof to provide ample protection for the proceeds of the sale or lease as the necessities of the case may demand for the protection of all persons concerned, whether born or unborn at the date of such sale. (p. 353).

3. SAME—*Sale of Contingent Remainders—Interest of Unborn Remaindermen—Protection.*

   Where the parties named in a suit to sell lands in which are contingent remainders in persons yet unborn include the trustee, representing all interests, the life tenants whose unborn children are contingent remaindermen in fee in the land, and an infant son of one of the life tenants, who is of the same general class as the unborn children, such parties sufficiently represent and protect the interests of the contingent remaindermen yet unborn. (p. 353).

4. SAME—*Contingent Remainders—Sale—Jurisdiction.*

   Though section 24b (1), ch. 71, Code, authorizes the circuit court of the county in which such land is situated to decree a sale thereof, a court of common pleas of such county, having concurrent jurisdiction with the circuit court thereof, likewise may exercise such authority, so long as the jurisdictional amount of such latter court is not exceeded. (p. 357).

Appeal from Circuit Court, Kanawha County.

Suit by W. B. Geary against J. F. Butts and others. Decree for complainant, and defendant J. F. Butts appeals.

*Affirmed and remanded.*

*S. B. Avis,* for appellant.

*Payne, Minor & Bouchelle,* for appellee.

Lynch Judge:

By a deed of April 17, 1894, H. D. Shrewsbury and his wife, Pidgie Q., conveyed to Samuel L. Flournoy, trustee, certain property on Capitol Street in the city of Charleston, now occupied by the Colonial Amusement Company, the Diamond Shoe & Garment Company, and Cablish Bros., in trust for the said Pidgie Q. Shrewsbury for and during the natural life of her husband, and after his death in trust for the said Pidgie Q. Shrewsbury during her life and for their children, Frances C., Herman D., Talbott Q., and Kenneth O., for and during their natural lives, respectively, share and share alike, with remainder in fee after the death of said Pidgie Q. Shrewsbury and the death of each of said children to the respective heirs at law of said children, respectively.

Flournoy having died November 28, 1908, George H. Shrewsbury was substituted trustee in his stead, and September 28, 1916, J. Harwood Graves was substituted in lieu of George H. Shrewsbury who in the meantime had also died. Of the cestuis que trust now living Talbott Q. Shrewsbury, Kenneth O. Shrewsbury and Frances C. Shrewsbury, now the wife of J. Harwood Graves, trustee, had attained their majority before May 15, 1917, and they together with J. Harwood Graves, trustee, and in his own right, and W. D. Payne, appended to whose name in the descriptive term, "special commissioner," on that day joined in the execution of a deed purporting to grant to W. B. Geary property covered by the trust and described in the deed of May 15, 1917, as all that certain lot or parcel of land situate in the city of Charleston, West Virginia, on the west side of Capitol Street, and fronting thereon 170 feet, described as follows: "Beginning on

said street at the property line between the property hereby conveyed and that of the Charleston National Bank, and extending to the line of the Fleetwood Hotel property (now owned by J. F. Butts) one hundred and seventy (170) feet; thence with the line of the property between the said Fleetwood Hotel property and the property hereby conveyed one hundred and forty-five and one-half (145½) feet to the back line; thence with the back line of said property two hundred and forty-one two-tenths (241.2) feet to the line of the Charleston National Bank property, thence with the same to the place of beginning one hundred thirty-two and four-tenths (132.4) feet, with the privileges and appurtances thereto belonging.''

On July 17, 1917, W. D. Payne, special commissioner, executed to Geary a deed conveying to him the property described in detail as in the deed in which Payne joined as such commissioner, in each of which he set out, but with more particularity in the latter, the source of his authority, decrees entered May 10 and July 11, 1917, in a suit then pending in the common pleas court of Kanawha County in which Talbott Q. Shrewsbury and others were plaintiffs and J. Harwood Graves, trustee, and others were defendants, both of which decress are filed as exhibits with the bill in this cause. On June 8, 1917, the plaintiff Geary and the defendant J. F. Butts entered into a contract of sale and purchase for 75 feet, more or less, of the property theretofore purchased by Geary from the Shrewsbury heirs, and running back the full depth of the property, with other stipulations as to the consideration and terms of payment and acknowledgment of the rights of the occupants and payment of rentals by them, none of which have important bearing upon the issues involved upon this appeal.

On June 19, 1917, Geary, Butts and defendant U. G. Young entered into another contract respecting the property whereby Geary agreed to sell direct to Young 50 feet, more or less, of the property purchased by Butts of Geary, this transaction involving the ground covered by the buildings occupied by the Colonial Amusement Company and the Dia-

mond Shoe & Garment Company, except a small triangular
strip not so covered in the extreme rear of the aforesaid 50
feet to be conveyed by Geary to Butts, with other details not
now necessary to recite.

Ostensibly to enforce performance of these contracts, but
really to adjudicate the title thereto to be valid and market-
able under the provisions of the trust to which the property
is subject, apparently is the chief purpose of this litigation.
The marketability of the title depends upon the proper con-
struction of the following provisions of the trust binding upon
the property, the trust executed by H. D. and Pidgie Q.
Shrewsbury to Flournoy in April, 1894: "In trust, never-
theless, for the said Pidgie Q. Shrewsbury for and during
the natural life of the said H. D. Shrewsbury, and after the
death of the said H. D. Shrewsbury for the said Pidgie Q.
Shrewsbury, Frances C., Herman D., Talbott Q., and Ken-
neth O., for and during their natural lives, respectively, share
and share alike, with remainder in fee after the death of each
of said children to the respective heirs at law of said children,
respectively, according to the West Virginia statute of de-
scents, excluding rigorously, however, every husband whose
claim on said property may be based solely on a curtesy right,
and every wife whose claim on said property may be based on
a dower right alone. But on the death of said Pidgie Q. Shrews-
bury, after the death of Harry D. Shrewsbury, her interest
in said property shall vest in said children for life, with re-
mainder in fee to their heirs at law in the same manner as
their own interest therein would pass to their own heirs at
law under this deed.

"If any of said children shall die under twenty-one years
of age, and without issue, then this deed shall stand for the
surviving children as though the name or names of said
child or children dead before the age of twenty-one years un-
married and without issue, nowhere appeared in this deed as
beneficiaries or cestuis que trust, and any heir at law of any
of said children shall be entitled to his share and interest in
said property without awaiting the death of any other of
said children. As soon as anyone legally becomes an heir at

law of any of said children (except in case of the death of any of said children hereinbefore provided for) such heir at law is entitled to his share and interest in said property, disregarding all questions as to how or when the heirs at law of the other said children shall appear and develop themselves, save and except the contingency of one or more of said children shall die under twenty-one years old and without issue, when and in which event or events the share or shares of such child or children dead under twenty-one years old and without issue, shall pass to and vest in the survivors of said children as purchasers under and by virtue of this deed, and not by descent.''

Herman D. Shrewsbury died at the age of 23 years April 21, 1916, unmarried, intestate and without issue. Frances C. Shrewsbury, now Frances S. Graves, is 32 years of age and has one son, James Harwood Graves, Jr., an infant of four years. Talbott Q. Shrewsbury, now about 28 years of age, and Kenneth O. Shrewsbury, now about 26 years old, are still living, unmarried and without issue.

Under the terms of the trust Pidgie Q. Shrewsbury was the owner of the entire equitable interest in the property during the life of her husband, and upon his death the legal title was held by the trustee for the joint benefit of Pidgie Q. Shrewsbury and the children, Frances C., Herman D., Talbott Q., and Kenneth O. Shrewsbury, for and during their natural lives, with remainder over in fee to the respective heirs at law of each of said children after the death of Pidgie Q. Shrewsbury. The latter survived her husband and later died while all her four children were living, each of whom lived to be over the age of 21 years, and are now living, except Herman D. Shrewsbury, as noted above.

Upon the death of Pidgie Q. Shrewsbury her one-fifth equitable interest for life passed to her four children for life, thus giving to each, with what he already had, an undivided one-fourth equitable interest for life, with remainder over to their heirs at law. Upon the death of Herman D. Shrewsbury, unmarried and without issue, his undivided one-fourth interest became vested in his sister and two brothers in their

own right, thus making each of the three surviving children owner of an undivided one-third of an undivided one-fourth equitable interest in his own right, and of an estate for life in an undivided one-fourth equitable interest, with remainder over in this particular one-fourth interest to his heirs at law. Thus there is a vested remainder in fee in the infant son of Mrs. Graves for the undivided one-fourth equitable interest held by her, which is subject to open and let in any children of Thus there is a vested remainder in fee in the infant son of Mrs. bott Q. nor Kenneth O. Shrewsbury is married or has children, the remainder in the undivided one-fourth interest held by each of them is contingent, not vested.

It was owing to the difficulty of effecting a valid sale of property subject to such contingent estates that the legislature in 1911 enacted a law designed to remedy this situation. Sections 24b (1)—24b (12), ch. 71, Barnes' Code 1918. This act authorized the circuit court of the county in which land subject to contingent or other remainders is situated, upon a bill filed by any of the persons specified in section 24b (2), to decree a sale or lease of such land and substitute the proceeds of such sale or lease therefor, giving to all persons the same estates and interests, vested, contingent or expectant, in such proceeds as they had or would have had in the land itself. In specifying who shall be made parties to such suit section 24b (3) provides: · "All persons in being who have vested, contingent or expectant estate or interest, either at law or in equity, in said land, or in the oil, gas, coal or other minerals to be sold or leased, shall be made parties, and where the bill is filed by the guardian of an infant, or the committee of an insane person, such infant or insane person shall be made defendant. Provided, however, that the joinder of any person having only a contingent or expectant estate or interest may be dispensed with where the person not joined is virtually represented by any other party or parties to the suit; and where such virtual representation existed, no order or decree or sale or lease made thereunder shall be deemed erroneous or void because of such nonjoinder."

As that section requires, all persons in being having inter-

ests in the land were made parties to this suit, the infant J. Harwood Graves, Jr., being represented by a guardian ad litem, as provided in section 24b (5). But appellant contends that the unborn children of Talbott Q: Shrewsbury and Kenneth O. Shrewsbury are deprived, by the proceeding under this statute, of their property without due process of law, contrary to the provisions of the Bill of Rights of the Consituation of this State (section 10, Art. 3) and the Fourteenth Amendment to the Constitution of the United States. There can be no doubt, however, so far as the interests affected in this suit are concerned, of the constitutionality of the act pursuant to which the sale was made. From earliest days the state through its legislature has exercised paternal power over the persons and property of infants for the protection of their interests and welfare. Without such authority as this act bestows an estate subject to contingent remainders frequently might be tied up indefinitely and a sale thereof rendered impossible because no purchaser could be induced to risk a title which would be a source of future litigation, when the interests of remaindermen, living and unborn, clearly might require a sale owing to lack of funds to preserve the corpus of the property at its original value or to develop or improve it sufficiently to yield the income that it should yield. Without such remedy not only is the sale of much property rendered difficult, but its value may be greatly diminished or entirely lost to those interested therein. It is in the interest of the remaindermen that the state provide means to unfetter an estate by assuring it to a purchaser against the remote or latent claims of infants yet unborn and setting aside the proceeds as a substitute for the land sold, to which will attach the same interests which theretofore had existed in the land. Such procedure merely changes the form of the property when in the opinion of the court and of those persons in being who have interests therein it is expedient to do so. Acts such as ours have almost invariably been sustained as a proper exercise of the sovereign power of the state. *Brevoort* v. *Grace*, 53 N. Y. 245; *Ebling v. Dryer*, 149 N. Y. 460; *Springs* v. *Scott*, 132 N. C. 548;

*Bullock* v. *Oil Co.,* 165 N. C. 63; *Sohier* v. *Mass. General Hospital,* 3 Cush. 483; *Reinders* v. *Koppelmann,* 68 Mo. 482, 502. In *Brevoort* v. *Grace, supra,* the court said (p. 252): Doubts were expressed  *  *  whether this power extended to those not in being who might thereafter be entitled to some estate in the premises. The reasons upon which the rule is based as to the former (living infants) apply with equal force as to the latter. In both there is a want of capacity to manage and preserve the property, so as to protect the inheritance of those who are or may become entitled thereto, and hence the necessity of devolving this duty upon the sovereign."

The interests of the unborn children were fully represented and protected by those made parties to the suit, namely, the three surviving life tenants, J. Harwood Graves, Jr., remaindermen in fee of an undivided one-fourth interest, and the trustee representing the whole estate and all interests therein. It is admitted by appellants that the infant remainderman, through his guardian ad litem, sufficiently represented other possible unborn children of his parents, contingent remaindermen with him as to his one-fourth interest, as to protect and safeguard their interests. This is in accordance with the familiar rule of necessity and convenience that where there are remaindermen of a class in being who are made parties to a cause affecting the property, the decree rendered therein generally will bind all others who subsequently come into the class, on the theory that the living representative will look after and protect the interests of the whole class. *Boal* v. *Wood,* 70 W. Va. 383; *Tonnele* v. *Wetmore,* 195 N. Y. 436; *Kent* v. *Church,* 136 N. Y. 10; *Betz* v. *Farling,* 274 Ill. 107; *Thompson* v. *Adams,* 205 Ill. 552; *Hale* v. *Hale,* 146 Ill. 227; *Springs* v. *Scott,* 132 N. C. 548; *Ex parte Yancey,* 124 N. C. 151; *Ridley* v. *Halleday,* 106 Tenn. 607; *Reed* v. *Ala. & G. Iron Co.,* 107 Fed. 586; *McClure* v. *Crume,* 141 Ky. 361; *Harrison* v. *Wallton,* 95 Va. 721; 23 R. C. L. 584; Note Ann. Cas. 1917A 614.

The appellants contend that while J. Harwood Graves, Jr., through his guardian ad litem, represents others who may

become entitled to share with him in that particular one-fourth interest, thus bringing it before the court, yet he cannot represent and bind the unborn children of the other life tenants; and for that reason they insist that the one-fourth interests in remainder to the heirs of Talbott Q. Shrewsbury and Kenneth O. Shrewsbury, respectively, are not before the court. Such representation as this has been held sufficient in *Tonnele* v. *Wetmore,* cited, a suit to construe a will, yet in many respects similar to this case. The will there involved, after providing for the testator's widow, bequeathed and devised all his property to his eight children by name for life, "to be divided equally between them, share and share alike, in such manner that each child shall receive only the net rents, incomes and profits of his or her share during her life, and at the death of each child his or her share shall go to and vest in his or her lawful issue." There too the grandchildren of the testator were to take only such shares as their parents took. The surviving children of the testator and those of his grandchildren then living were made parties, and it was held that such grandchildren represented not only themselves but those unborn, and that a subsequently born grandchild was bound by the decree. The court said (p. 445) : "The parties to the action owned the real estate subject only to the contingency of the birth of other children within the trust term who would take some undivided interest in said property. In protecting the interests of the grandchildren then living, the interests of children thereafter to be born were necessarily to the same extent protected."

But the interests of the unborn remaindermen here were represented not only by a living remainderman, but by the trustee and life tenants. To the former was intrusted the full legal title to and control over the property, and therefore he was a representative of all interests, including those of persons not yet in esse. With respect to the life tenants, the prevailing view is to the effect that they may represent the inheritance where there are no remaindermen in being when the court is called upon to act in regard to property in which remainders have been created. *Burlingham* v. *Vandevender,*

84 W. Va.

47 W. Va. 804; *Baylor's Lessee* v. *Dejarnette,* 13 Gratt. 152; *Faulkner* v. *Davis,* 18 Gratt. 651, 683 et seq.; *Ridley v. Halleday,* 106 Tenn. 607;; *Gavin* v. *Curtin,* 171 Ill. 640; 23 R. C. L. 585; Note, 97 A. S. R. 762; Note, 8 L. R. A. (N. S.) 49, 56; 1 Freeman on Judgments (4th Ed.) § 172. There is additional reason for such a rule where, as here, the contingent interests involved are those of the life tenants' own children. *Baylor's Lessee* v. *Dejarnette, supra; Faulkner* v. *Davis, supra.* There is authority, however, to the contrary, holding that for a decree affecting property to be binding on unborn remaindermen it is essential that their interests be represented by some person before the court who has an estate of inheritance. *Bullock* v. *Oil Co.,* 165 N. C. 63; *Downin* v. *Sprecker,* 35 Md. 474; *Dunham* v. *Doremus,* 55 N. J. Eq. 511; *Miller* v. *Foster,* 76 Tex. 479.

Here the unborn heirs were represented by a living remainderman whose interests were identical with those of the unborn, by the trustee, and by the life tenants, all parties to the suit, and finally by the court, a representation fully adequate, we think, to safeguard and protect the interests of any remaindermen not yet in esse. Furthermore, section 24b (3), ch. 71, Barnes' Code 1918, expressly requires only persons in being having any vested, contingent or expectant estate or interest in the property to be made parties, thus by implication recognizing the sufficiency of their representation of those who may later be born. Whether that would be sufficient in every case we do not deem it necessary to decide at this time. In this instance, however, the interests of unborn remaindermen were sufficiently represented and protected by those who were made parties, and Geary, therefore, acquired a valid legal title at the sale directed in that suit.

The contention that the court of common pleas of Kanawha County did not have jurisdiction to decree the sale, since section 24b (1) bestowed such authority upon the circuit court of such county, is without merit. Section 1, Art. 8 of the Constitution of this state vests judicial power "in a supreme court of appeals, in circuit courts and the judge thereof, in

such inferior tribunals as are herein authorized, and in justices of the peace.'' Section 12 grants to circuit courts ''appellate jurisdiction in all cases, civil and criminal, where an appeal, writ of error or supersedeas may be allowed to the judgment or proceedings of any inferior tribunal. They shall also have such other jurisdiction, whether supervisory, original, appellate or concurrent, as is or may be prescribed by law.'' And section 19 provides that ''the legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit court, subject to such limitations as may be prescribed by law.'' Acting upon this express authority the legislature created the court of common pleas of Kanawha County, and made it inferior to the circuit court in that, while the jurisdiction of the latter is without limitation as to the amount in controversy in any one case or cause or causes consolidated or heard together, the former does not have jurisdiction of an amount in excess of $100,000, as at first provided, but by an amendment $500,000, as now prescribed. In other respects its jurisdiction is concurrent with that of the circuit court of Kanawha County. Ch. 88, Acts 1917. The legislature had the power, and that is not denied, to create courts of common pleas for any county it may deem necessary or requisite. The mere circumstance that the statute regarding contingent estates in remainder grants jurisdiction to circuit courts to hear and determine the rights of the parties interested in the protection and administration of such estates does not necessarily manifest an intent to withhold the exercise of the same judicial power from such inferior courts where the jurisdiction is concurrent. *Rosin Coal Land Co.* v. *Martin,* 81 W. Va. 33. Moreover, appellants were not denied, but had, the benefit of the right of review by the circuit court of Kanawha County in consonance with the constitutional powers cited. We held in *Robinson* v. *Charleston Interurban Ry. Co.,* 80 W. Va. 290, that recourse thereto was necessary to warrant this court to grant an appeal from or writ of error to a judgment or decree of a court inferior to the circuit court.

For these reasons we are of opinion to affirm the decree and remand the cause for further proceedings therein.

*Affirmed and remanded.*