ANNA MENNIG, Appellee, v. HELEN MENNIG HOWARD et al., Appellants.

No. 41305.

JANUARY 12, 1932.

D. Cole McMartin and W. B. Sloan, for appellee.

Maxwell A. O'Brien and Rufus W. Scott, for appellants.

DE GRAFF, J.—The petition of the plaintiff alleges that C. W. Mennig, husband of plaintiff Anna Mennig, died August 28, 1916, seized of certain described real estate set forth in the petition; that C. W. Mennig left surviving him, as his only heirs at law Anna Mennig, his widow (plaintiff herein), and Helen Mennig, now Helen Mennig Howard, his daughter and only child; that C. W. Mennig died testate, and that portion of his will material to this cause is hereinafter set out; that plaintiff Anna Mennig is still living, and the defendant Helen Mennig Howard is also living, and was, on the 27th day of October, 1921, married to Charles S. Howard, and that the said Helen Mennig Howard has no child or children, and never has had; that the debts and charges against the estate have been paid, together with all the costs, and the estate closed; that the defendant Helen Mennig Howard is the absolute owner under the terms of the will of one-half of the income of said property so long as she and the plaintiff shall live, but if the plaintiff should die before said Helen Mennig Howard, then, upon the death of said Anna Mennig, the one-half interest in the above-described real estate now held by Helen Mennig Howard would become hers absolutely; that the unborn heirs of Helen Mennig Howard have a contingent interest in the above-described property, contingent, first, upon their coming into being, and second, upon Helen Mennig Howard's dying before the plaintiff Anna Mennig, and leaving a child or children of her body surviving her, in which case the child or children would take the one-half in-

938

terest in the above-described property, as theirs absolutely; that the will contains no reservation against alienation of the real estate; that the said property is unencumbered; that the amount of the taxes, both regular and special, has greatly increased since the death of C. W. Mennig, and has become a constant burden upon the owners of said property, with great danger of the property's being dissipated through payment of taxes; that no income is derived from said property, and said property is about to be lost because of the inability of the owners to pay taxes on same; that the plaintiff and defendants claim their interest in said property through the same source; that said property is free and clear of all liens and encumbrances; that said property cannot be divided in kind, but should be ordered sold, as provided by law; that, on or about the 9th day of November, 1925, a petition was filed in the District Court of Iowa in and for Polk County, asking for partition of the real estate involved herein; that a decree of partition was entered; that on appeal the Supreme Court of Iowa, in the case of Mennig v. Graves, 211 Iowa 758, decided that the unborn heirs of Helen Mennig Howard had a contingent interest in said real estate, and, not having been made parties in said partition suit, are not bound by said decree, the court having no jurisdiction over said unborn heirs; that the partition decree aforesaid and all proceedings had thereunder be revoked, set aside, and held for naught; and that the real estate involved herein be repartitioned, and all necessary parties to said partition suit be joined in this action.

Subsequently, to wit, August 25, 1931, the plaintiff herein, Anna Mennig, moved the court to appoint a suitable person to act for the unborn heirs of Helen Mennig Howard, defendant herein, as provided for by the laws of the state of Iowa, to wit, Chapter 231 of the Laws of the 44th G. A. Thereafter, the trial court sustained plaintiff's motion, and ordered that Maxwell A. O'Brien be appointed to represent and act for the unborn heirs of Helen Mennig Howard, and to take such action as was necessary to protect the interest of said unborn heirs of Helen Mennig Howard in the above-entitled cause.

On the 10th day of October, 1931, the defendants Helen Mennig Howard and Charles S. Howard filed answer, admitting each and every allegation contained in plaintiff's petition, except as specifically denied, and that said defendants join with

the plaintiff in asking that the decree of partition heretofore made of the premises described in this action and all proceedings had thereunder in the first partition suit be set aside and held for naught, and further allege that the plaintiff and these defendants are the only persons who could be affected by the setting aside of the decree formerly entered. In the second count of said answer it is alleged that the law as contained in Chapter 231 of the Laws of the 44th G. A. of the state of Iowa is unconstitutional, in that it will deprive the unborn heirs of Helen Mennig Howard, joint defendants in this case, of their property without due process of law, contrary to Section 9 of the Bill of Rights of the Constitution of Iowa, and contrary to the 14th Amendment to the Constitution of the United States, and it is prayed that plaintiff's petition be dismissed, except as to that part of plaintiff's petition asking that the prior decree in partition and all proceedings thereunder in said cause be set aside. Thereafter, the defendants the unborn heirs of Helen Mennig, by Maxwell A. O'Brien, their guardian *ad litem*, filed answer to plaintiff's petition, in which the said O'Brien admits that he is the duly appointed person to represent said defendants, but denies affirmatively, as said representative, the constitutionality of Chapter 231 of the Laws of the 44th General Assembly, in that it would deprive the unborn heirs of Helen Mennig Howard, defendants in this case, of their property without due process of law, as being contrary to the provisions of Section 9, Bill of Rights, of the State Constitution, and contrary to the 14th Amendment to the Constitution of the United States. The prayer is to dismiss the plaintiff's petition, except as to that part thereof asking that the prior decree in partition of this property and all proceedings thereunder be set aside.

Such are the pleadings in the case at bar.

The defendant Helen Mennig Howard does not complain of the trust feature of the decree.

But one primary proposition is involved on this appeal, to wit, is Section 12351-d1 constitutional? That is: Is said statutory provision in violation of Section 9 of the Bill of Rights of the Constitution of Iowa and the 14th Amendment of the Constitution of the United States? At the threshold of this decision it may be well to quote Code provision 12351-d1, Code, 1931, which reads:

"When it appears in the petition for partition that a person not in being has an interest, vested or contingent, as a cotenant of the land sought to be partitioned, the court shall have jurisdiction over the interest of such person not in being and shall appoint a suitable person to act for him in such proceeding and the provisions of Section 10996, so far as applicable, shall apply to persons so appointed. The decree of partition and the division or sale thereunder shall be of the same force and effect as to all such persons, or persons claiming by, through or under them, as though they were in being at the time of entry of the decree, and the property or proceeds of the interest of such person shall be subject to the order of the court until the right thereto becomes fully vested."

A brief recital of the historical facts pertaining to this case should first be stated. One C. W. Mennig died on or about the 28th day of August, 1916, seized of the title to the real estate involved herein, which is known as Mennig Place, Plat 2. He died testate, leaving surviving him his wife, Anna Mennig (plaintiff), and an only daughter, Helen Mennig, now Helen Mennig Howard, one of the instant defendants. The will of C. W. Mennig was duly probated in the District Court of Iowa in and for Polk County, and said will *inter alia* referred to the residue of his estate, which included the involved real estate. The provision reads as follows:

"All the rest and residue of my estate of every kind and character, real, personal and mixed, wherever situated, of which I may die seized or possessed, or that may become due my estate, I give, devise, and bequeath one-half thereof absolutely and in fee simple to my beloved wife, Anna Mennig, and the remaining one-half thereof I give, devise and bequeath to my beloved daughter, Helen Mennig, upon the conditions and with the qualifications that said Helen Mennig shall have the entire net income therefrom as long as she and my wife, Anna Mennig, both live, but if the said Helen Mennig should die before said Anna Mennig, leaving no children of her body surviving her, then said one-half interest shall become the property absolutely and in fee simple of said Anna Mennig, but if said Helen Mennig should die before said Anna Mennig leaving a child or children of her body surviving her, then said half interest shall become

the property absolutely and in fee simple of the surviving child or children of said Helen Mennig, but if said Anna Mennig should die before said Helen Mennig, then said half interest shall upon the death of said Anna Mennig become the property absolutely and in fee simple of said Helen Mennig.''

The plaintiff Anna Mennig is still living, as is the defendant daughter Helen, who was on October 27, 1921, married to Charles S. Howard, and since said date has been living with her husband. To them no child or children have been born. The real estate in question at the time of Mennig's death was unimproved, and since his death practically no income has been derived therefrom. At the time of his death the annual taxes on said real estate amounted to $68, and the taxes on said real estate for 1931 amounted to $722.14. The instant petition was filed August 25, 1931, and the decree was entered October 22, 1931, in which the court ordered the property partitioned by sale, and that one-half of the proceeds be paid to the plaintiff Anna Mennig and the other one-half held in trust by a trustee to be appointed by the court until the character of the estate be determined, and that the income from the one-half held in trust be paid to Helen Mennig Howard.

It is true that no original notice can be served on a person not *in esse*, altho this court has adopted the rule of virtual representation, and recognized in Buchan v. German American Land Co., 180 Iowa 911, said doctrine, but refused to extend such doctrine to the extent which is defined in the recent statute (Section 12351-d1, Code, 1931). Mennig v. Graves, 211 Iowa 758. Applying the rule of the Buchan case, supra, if Helen Mennig Howard had one child living upon whom service could be had, and that child was represented in court by guardian *ad litem*, then all the after-born children of Helen would be bound by the decree. The General Assembly of Iowa recognized that the rule of virtual representation was not sufficient to meet the circumstances and conditions of a case similar to the instant case, and attempted to cure and did cure the defect as to the unborn child of a co-tenant in real property. The said act of the 44th G. A. necessarily met the objections urged here based on Section 9 of the Bill of Rights of our state Constitution, and also the 14th Amendment to the Constitution of the United States. Section 9 of our Bill of Rights provides that no person

shall be deprived of life, liberty, or property without due process of law; the 14th Amendment of the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law.

There was no depriving of anyone of his property under the statute in the instant case. The statute merely changed the real estate into a personal estate for the benefit of all parties in interest. In Sohier v. Mass. Gen. Hospital, 3 Cush. Rep. 483, l. c. 497 (Mass.), it is said:

"It is deemed indispensable, that there should be a power in the legislature to authorize a sale of the estates of infants, idiots, insane persons, and persons not known, or not in being, who cannot act for themselves. The best interest of these persons, and justice to other persons, often require that such sales should be made. It would be attended with incalculable mischiefs, injuries, and losses, if estates, in which persons are interested, who have not capacity to act for themselves, or who cannot be certainly ascertained, or are not in being, could under no circumstances be sold, and perfect titles effected. But, in such cases, the legislature, as *parens patriae*, can disentangle and unfetter the estates, by authorizing a sale, taking precaution that the substantial rights of all parties are protected and secured. That the legislature has such power and may rightfully exercise it, has been fully settled, and the reasons and grounds of it fully illustrated and explained, in the adjudged cases, to which reference has already been made."

The primary argument against the instant statute is that it might be said that the unborn children had rights to specific property, and that a sale deprived them of that right and gave them a substitute. See Iowa Law Review, Nov., 1931, Vol. 17, No. 1, p. 24. As heretofore stated, it is the constitutional provisions against the taking of property without due process which form the foundation of the argument against this class of legislation. The possible injury to owners of the future interest is small in comparison to the indisputable benefit resulting from the sale, both to the owner of the present estate and also to society at large. The interest of society in the free alienation of land has received recommendation in many ways for centuries past. See Harvard Law Review, Vol. 42, p. 62.

There is no question that the statute involved here is new to the laws of Iowa, but the fact stands that the legislatures of many states of these United States, as well as the Parliament of England, have enacted similar statutes years ago. Such statutes, including the recent statute in this state, provide a needed legal means for a desired end. The statute of Massachusetts is practically identical with the Iowa statute, and the Supreme Judicial Court of Massachusetts, in Loring v. Hildreth, 49 N. E. 652, held that a statute is valid which provides that, where persons not *in esse* have an interest in land to be affected by judgment or decree, a person may be appointed to represent them, and the decree in such action shall be binding upon the persons not *in esse* who are so represented. It was also held in said decision that such a statute was not in violation of the Declaration of Rights, Article XII of the Constitution of Massachusetts, which provides against depriving any citizen of his property, except by the law of the land; nor did it infringe upon the general prohibition of the 14th Amendment to the Constitution of the United States.

The legislature of West Virginia enacted a similar statute to the one in question here, and the Supreme Court of that state in Geary v. Butts, 99 S. E. 492 (W. Va.), upheld the constitutionality of the statute and overruled the constitutional challenges which were there made, as here. See, also, Brevoort v. Grace, 53 N. Y. 245; Ebling v. Dreyer, 44 N. E. 155 (N. Y.); Reinders v. Koppelmann, 68 Mo. 482; Dawson v. Wood, 98 S. E. 459 (N. C.); Pendleton v. Williams, 95 S. E. 500 (N. C.); 21 C. J. p. 1003; Subsection 159. In Springs v. Scott, 44 S. E. 116 (N. C.), it is said:

"We are thus confronted with the constitutional question as to the power of the legislature to pass the act, and its application to wills and deeds executed prior to its passage. It is, of course, conceded that the legislature has no power to destroy or interfere with vested rights. Are such rights as may accrue to any children who may hereafter be born to Alva C. Springs, within the meaning of this constitutional provision? * * * 'A bare expectancy is not such a vested right as will be protected by the constitutional provision.' * * * It is well settled that courts of equity as they existed in this state prior to the Con-

stitution of 1868, possessed the power to order the sale of lands of infants and tenants in common when partition was impracticable, and to administer trusts. * * * It is equally clear that the superior courts under our present judicial system have the same power and equitable jurisdiction as the courts of equity had prior to 1858. * * * 'Where property has been settled by will or deed for life, with limitations over the persons not in being, who are incompetent to exercise a legal judgment, the legislature may authorize a sale, and the reinvestment of the proceeds for the same uses, if such a course will be for the benefit of all concerned, or beneficial to some of them and not injurious to the rest.' * * * 'Such a sale simply turns the property into another form where it may bear fruit for the first taker, who would otherwise have a barren inheritance, and be postponed as regards real and substantial benefit, to persons yet unborn.' "

See, also, Gavin v. Curtin, 49 N. E. 523 (Ill.).

We hold, therefore, as did the trial court, that the statute in question is not in violation of either the provisions of our state Constitution or of the Constitution of the United States.— Affirmed.

All Justices concur.